SLIP OP. 05-152

UNITED STATES COURT OF INTERNATIONAL TRADE

KOYO CORPORATION OF U.S.A.,

<table>
<tr><td></td><td>Plaintiff,</td></tr>
<tr><td>v.</td><td></td></tr>
<tr><td>UNITED STATES,</td><td></td></tr>
<tr><td></td><td>Defendant.</td></tr>
</table>

Before: Jane A. Restani, Chief Judge

Court No. 02-00800

OPINION

[On importer's protest, deemed liquidation inapplicable to merchandise entered at higher rate of duty than determined in antidumping duty proceedings.]

Dated:  December 1, 2005

Sidley, Austin, Brown & Wood LLP (Richard M. Belanger and Leigh Fraiser) for plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (James A. Curley) for defendant.

Restani, Chief Judge:  This matter is before the court on cross motions for summary judgment.  The essence of the dispute is the failure of Customs[1] to liquidate various of plaintiff's entries of merchandise at the lowered rate of duties determined as a result of antidumping duty proceedings.  Rather, Customs liquidated the entries at the original higher rates, which plaintiff was required to claim at entry and make deposit therefor while the antidumping proceedings were ongoing.  The government alleges that as a result of its own failure to obey the public notice of

_____

[1]  The Bureau of Customs and Border Protection ("Customs") is within the United States Department of Homeland Security.

reduced duties and liquidation instructions of the United States Department of Commerce ("Commerce"), it may obtain the benefit of the "deemed liquidation" statute, 19 U.S.C. § 1504[2], which gives Customs a set period of time to liquidate an entry and which, absent liquidation during that time period, treats the entry as having been liquidated at the entered rate. Thus, the government asserts it may retain the monies deposited at the erroneous entered rate. The court disagrees.

## FACTS

Before the court are various entries of roller and ball bearings made in 1990 and 1991. At the time of entry, antidumping duty orders issued by Commerce were in effect. The orders required duty deposits to cover estimated antidumping duties between 48 and 74 percent ad valorem. The importer had no choice as to the rate of antidumping duty it was required to assert upon entry pursuant to Commerce's orders. Because administrative reviews and litigation ensued, liquidation of the entries was suspended. The litigation was largely successful for importers and the rates were

---

[2] The applicable version of 19 U.S.C. § 1504 (Supp. 1993) reads in pertinent part:

**(a) Liquidation**
Unless an entry is . . . suspended as required by statute or court order, an entry of merchandise not liquidated within one year from:
(1) the date of entry of such merchandise;
. . . .
shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record.
. . . .
**(d) Removal of suspension**
When a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

lowered substantially. In most cases, the antidumping duty rates were finalized at under ten percent. In 1998, Commerce began issuing instructions to Customs to liquidate the entries at the lower rates. Some months earlier notices of the results of the litigation were published and suspension of liquidation was lifted. Customs, however, did not comply with the published notices or Commerce's instructions to liquidate promptly at the lower rates. In fact, Customs did nothing. Approximately one year later, Koyo Corporation of U.S.A. ("Koyo"), the plaintiff herein, contacted Customs about five of its entries. Customs immediately found these entries to have been "deemed liquidated," and Customs posted an "active" liquidation at the original higher antidumping duty rate based on the "deemed liquidation."

Another batch of entries were similarly liquidated some months later. As to the final entry, once again, contact by the importer triggered the final manual liquidation at the higher rate based on the earlier "deemed liquidation." Koyo protested the liquidations, which protests were denied. This action followed.

## JURISDICTION

The court has jurisdiction under 28 U.S.C. § 1581(a), as plaintiff timely protested all of the published liquidations at issue and then timely filed suit in this court.[3]

---

[3] There is a question as to whether one can protest a bare "deemed liquidation," which occurs by operation of law. See United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550, 1560 (Fed. Cir. 1997) (holding in government enforcement action deemed liquidation in favor of the importer is a final, unalterable event, which cannot be undone by a later "liquidation"). As in Cherry Hill, here there was an "actual" liquidation following the purported "deemed" liquidation, but in contrast to Cherry Hill, the later "liquidation" did not purport to alter the "deemed liquidation." As required by Fujitsu General America, Inc. v. United States, 283 F.3d 1364, 1375-76 (Fed. Cir. 2002), plaintiff, as an importer seeking a refund, protested the "actual liquidations." Presumably, if protest is not available an importer could file an action under the court's residual jurisdiction, 28 U.S.C. § 1581(i) to challenge a non-qualifying "deemed liquidation."

## DISCUSSION

The issue here is whether the deemed liquidations, on which defendant relies, were actually proper liquidations based on 19 U.S.C. § 1504, in which case the later consistent active liquidations will stand. On the other hand, if the entries were not properly "deemed liquidated," then plaintiff's protests of the posted liquidations should have resulted in reliquidation at the lowered rates resulting from the lengthy administrative proceedings and subsequent litigation.

Congress initially enacted § 1504(d) to limit the amount of time which Customs could take to liquidate entries. The time limit imposed was four years. Customs Procedural Reform and Simplification Act, Pub. L. No. 95-410, § 209(a), 92 Stat. 888 (1978). In so doing, Congress "sought to increase certainty in the customs process for importers, surety companies, and other third parties . . . ." Int'l Trading Co. v. United States, 412 F.3d 1303, 1310 (Fed. Cir. 2005) (internal citations omitted). The statute also imposed a ninety-day time limit for Customs to liquidate entries after removal of suspension of liquidation of those entries, otherwise the entries would be deemed liquidated at the rate asserted by the importer at the time of entry. The statute had an unfortunate anomaly that made deemed liquidation available for entries for which removal from suspension occurred within the four-year period, but not for entries for which removal from suspension occurred even one day after the four-year time limit. In those circumstances, Customs had an unlimited amount of time in which to liquidate entries.

Congress corrected this anomaly in 1993, making deemed liquidation available to all entries regardless of when removal from suspension occurs. North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 641, 107 Stat. 2057, 2204. The 1993 amendment also

increased the deemed liquidation period from ninety days to six months after removal of suspension.

In International Trading Co., 412 F.3d at 1310, the court noted that a primary motivation behind the

1993 amendment "was to remove the government's unilateral ability to extend indefinitely the time

for liquidating entries."[4]

The requirements for deemed liquidation following antidumping proceedings were set forth

in Fujitsu.

> Thus, in order for a deemed liquidation to occur, (1) the suspension of liquidation
> that was in place must have been removed; (2) Customs must have received notice
> of the removal of the suspension; and (3) Customs must not liquidate the entry at
> issue within six months of receiving such notice.

283 F.3d at 1376.  Under 19 U.S.C. § 1504(d), if these conditions are met, the entry is finally

liquidated at the entered rate.  Almost all of the cases dealing with this statute have involved

importers' attempts to obtain the benefit of the statute by securing the finality of lower entry rates,

but the issue here is whether the statute may also be used to deprive importers of later determined

lower rates.

The government's interpretation of the statute is that the words are clear.  In essence, it states

that it is immaterial if the government benefits from its own neglect or other wrongdoing.  The words

of the statute control, and because it inadvertently failed to liquidate on time, it may retain any

money collected.  The government argues further that the goal of the statute was to achieve finality,

---

[4] Note that, following the signing one year later by the United States of the Antidumping Agreement of the Uruguay Round Agreements, Congress again amended § 1504(d), this time to bring the statute into conformity with obligations imposed by the Antidumping Agreement. See Uruguay Round Agreements Act, Pub. L. No. 103-165, 108 Stat. 4809 (1994).  Congress described the 1994 amendment as a "conforming amendment," and did not indicate any change in the intent behind the deemed liquidation statute. See § 220(c), 108 Stat. at 4865.

and that goal is met as soon as the six-month period elapses. This is absurd. The goal of the statute was to achieve finality so that importers would not be hit with unexpected duties years later, not so that Customs would profit by intentional wrongdoing or even mere inattention to duty.

The Federal Circuit explained in detail in Cherry Hill, 112 F.3d at 1559, that the purpose of the statute is not simply finality as such, but finality to prevent later harm to a particular class of persons, i.e., importers and their sureties.

> The "deemed liquidated" provision of section 1504 was added to the customs laws in 1978 to place a limit on the period within which importers and sureties would be subject to the prospect of liability for a customs entry. See St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763, 767 (Fed. Cir.1993); Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560, 1565 (Fed. Cir. 1984); Pagoda Trading Co. v. United States, 617 F. Supp. 96, 99 (CIT 1985), aff'd, 804 F.2d 665 (Fed. Cir. 1986); S. Rep. No. 95-778, at 31-32 (1978), reprinted in 1978 U.S.C.C.A.N. 2211, 2242-43 ("Under the present law, an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due.").
>
> The purpose of section 1504 was to bring finality to the duty assessment process. As the Commissioner of Customs said in his statement to the House committee that reported out the 1978 amendments to the Tariff Act, the provision that became section 1504 was designed to "eliminate unanticipated requests for additional duties coming years after the original entry." Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 Before the Subcomm. on Trade of the House Comm. on Ways and Means, 95th Cong., 1st Sess. 56 (1977) (statement of Robert E. Chasen, Commissioner of Customs). The effect of a "deemed liquidation" is therefore to fix the liability of the importer or surety and, once that liability is discharged, to terminate the government's cause of action for the entry in question. Thus, a "deemed liquidation" under section 1504 has the same effect as the expiration of the time for reliquidation in [United States v. Sherman & Sons Co., 237 U.S. 146 (1915)]: it subjects any further collection efforts by the government in connection with the same entry to dismissal for failure to state a claim upon which relief can be granted.

The same principle was recited in <u>Cemex, S.A. v. United States</u>, 279 F. Supp. 2d 1357 (CIT

2003), <u>aff'd</u>, 384 F.3d 1314 (Fed. Cir. 2004) (finding domestic parties have no right to challenge a

deemed liquidation by administrative protest).

> The purpose of [19 U.S.C. § 1504(d)] was to give importers finality
> as to their duty obligations by providing for deemed liquidation at the
> rate claimed by the importers, unless actual liquidation occurred
> within specified time limits.  See <u>Int'l Trading Co. v. United States</u>,
> 281 F.3d 1268, 1272 (Fed. Cir. 2002) . . .; <u>see</u> also <u>United States v.
> Cherry Hill Textiles, Inc.</u>, 112 F.3d 1550, 1559 (Fed. Cir. 1997) (The
> 'deemed liquidated' provision of section 1504 was added to the
> customs laws in 1978 to place a limit on the period within which
> importers and sureties would be subject to the prospect of liability for
> a customs entry.").
> . . . .
> As indicated, 19 U.S.C. § 1504(d) was meant to benefit importers.
> Therefore, it fits neatly into the Customs protest of liquidation
> scheme.  If a deemed liquidation or any liquidation is adverse to an
> importer, it has its protest remedies under 19 U.S.C. § 1514 and
> access to judicial review under 28 U.S.C. § 1581(a).  Domestic
> parties have no specific avenue of relief for improper liquidation.
> The Byrd Amendment[5] might have been accompanied with a new
> administrative remedy provision for domestic parties, but it was not.[6]

<u>Cemex</u>, 279 F. Supp. 2d at 1360, 1362 (footnotes omitted).

Thus, the goal of § 1504 was not to allow Customs to ignore the outcome of years of

litigation and to thumb its nose at Commerce and the courts.  Customs cannot ignore Federal

Register notices or throw liquidation instructions in a drawer and wait for six months to elapse from

---

[5]  The Byrd Amendment, which allows members of the domestic industry to claim
portions of the antidumping duties collected in a particular year, is found in the Continued
Dumping and Subsidies Offset Act of 2000, 19 U.S.C. § 1675c (2000) (amending the Tariff Act
of 1930), enacted as part of the Agriculture, Rural Development, Food and Drug Administration,
and Related Agencies Appropriations Act, Pub. L No.. 106-387, § 1003, 114 Stat. 1549 (2000).

[6]  <u>See</u> <u>supra</u> note 3 regarding challenge to purported "deemed liquidation" unaccompanied
by an "active" liquidation.

the time of public notice of new rates, so that it thereby collects duties to which it is not entitled. When the literal words of a statute create an absurd result, such a literal interpretation must be rejected. See Holy Trinity Church v. United States, 143 U.S. 457, 460 (1892).

The government argues, however, that the statute is not absurd. It says finality is achieved and plaintiff had ways to protect itself from its inattention. Defendant, however, can identify no way provided by statute or regulation for an importer to do that.

If the statutory scheme for deemed liquidation works as defendant alleges, the importer who sued as soon as "deemed liquidation" by operation of law occurred would have no remedy because the deemed liquidation, being final, could not be undone. See Cherry Hill, 112 F.3d at 1559. If the importer sued earlier, suspecting the government might not act timely, its suit would not be ripe. The government is expected to act in a regular manner and obey statutes. See United States v. Chem. Found., 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (citations omitted).

Mandamus is another remedy proposed by the government, but how does one obtain mandamus before the failure to carry out the statute has occurred? Mandamus is available for clear violations of the law. See Maier v. Orr, 754 F.2d 973, 983 (Fed. Cir. 1985) ("Before a writ [of mandamus] may properly issue, three elements must exist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.") (citations omitted). If the six months period has not elapsed, Customs has not yet violated the law.

Finally, the government faults plaintiff for not reminding it earlier to do its duty. Of course,

there is no statutory or regulatory requirement that an importer petition Customs during the six-month period to heed the Federal Register notice of the changed rates or the instructions from Commerce to liquidate properly. Furthermore, there is no formal permissive process to accomplish this. Customs has no obligation to comply with any request at any particular time, and importers have no rights to contest a failure to comply with such a request.

While the Federal Circuit noted in Cemex that domestic parties seeking to enforce higher duties could take some steps to increase the likelihood that entries would be properly liquidated, that fact did not determine the holding of the case. 384 F.3d at 1325. That is, Congress simply did not give domestic parties liquidation enforcement rights through protest procedures. Particularly before the Byrd Amendment (providing a mechanism for distributing unfair trade duties to domestic parties), domestic interests and Customs' interest in collecting duties were aligned, and they remain fairly well aligned now. Perhaps Congress found it unnecessary in such circumstances to give domestic parties a private enforcement right. Not so as to importers. Their interests are counter to those of Customs, and they therefore maintain the right to challenge duties assessed against them through a timely protest of liquidation. See 19 U.S.C. § 1514 (West Supp. 2005).

In sum, the court cannot accept an interpretation of 19 U.S.C. § 1504(d) which encourages Customs simply to forget or refuse to liquidate and to ignore a court victory favoring an importer as to antidumping duties. The incentive would be perverse and the opposite of what Congress intended. Congress wished to spur on Customs to liquidate timely. This distinguishes this matter from all other cases in which § 1504 may produce difficult results, such as Cemex. The court is not substituting its notions of good policy for those of Congress. It is interpreting the statute to do what Congress intended, not the opposite. Congress intended to encourage prompt liquidation, not

delayed liquidation.  Congress did not intend to urge Customs to sit back, not obey its directions, Commerce's directions, and the courts' directions, and thereby retain funds to which it no longer had valid claim.

Accordingly, Customs must reliquidate the entries at hand at the appropriate duty rates, as instructed by Commerce, and refund the duties owed with interest as required by law.  Judgment will be entered accordingly.

 

 

 

            /s/ Jane A. Restani     
              Jane A. Restani
              Chief Judge

Dated:  New York, New York.
This 1st day of December, 2005.