# United States Court of Appeals for the Federal Circuit

Corrected July 30, 2007

2006-1226

KOYO CORPORATION OF U.S.A.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Leigh Fraiser, Sidley Austin LLP, of Washington, DC, argued for plaintiff-appellee. With her on the brief was Richard M. Belanger.

James A. Curley, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With him on the brief was Barbara S. Williams, Attorney in Charge. Of counsel on the brief was Beth C. Brotman, Office of Assistant Chief Counsel, United States Customs and Border Protection.

Charles H. Bayar, of Scarsdale, New York, for amici curiae, American Association of Exporters and Importers, et al.

Appealed from: United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

2006-1226

KOYO CORPORATION OF U.S.A.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:    July 27, 2007

_____

Before LOURIE, GAJARSA, and LINN, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> GAJARSA.  Dissenting opinion filed by <u>Circuit Judge</u> LOURIE.

GAJARSA, <u>Circuit Judge</u>.

This is a statutory construction case.  The issue before us is what duty rate applies to entries that have been "deemed liquidated" by operation of law when the importer of the entries has timely protested the deemed liquidation rate and Commerce has issued a final assessment rate.  The United States (the "government," "Commerce," or "Customs") appeals from a summary judgment in which the Court of International Trade ("court" or "trial court") found that the government had improperly construed

19 U.S.C. § 1504(d) and thereby improperly retained antidumping duties from Koyo Corporation of U.S.A. ("Koyo").  For the reasons stated herein, we affirm the trial court.

## I.  BACKGROUND

Koyo is a domestic corporation and an importer of various bearings from Japan. Koyo seeks a refund of antidumping duties on ten entries of various types of bearings it imported from Japan.  From October 1990 to September 1991, Koyo made ten entries of bearings into the United States.  These imported bearings were subject to antidumping duty orders.  The orders required importers to make cash deposits to cover estimated antidumping duties.  In compliance with Commerce's antidumping duty orders, Koyo paid cash deposits between 48%-78% ad valorem on its ten entries of bearings.

Following entry and payment by Koyo of the applicable cash deposit rates, Customs suspended liquidation of Koyo's ten entries pending administrative review and subsequent litigation.  The administrative review and litigation concluded in 1998, resulting in significantly lower final antidumping duty rates ranging from 1.89% to 26.81%.  Commerce posted the final results and antidumping duty rates from the administrative and judicial procedures in the Federal Register by April of 1998, thereby removing the suspension of liquidation for all ten entries.[1]

---

[1]    See Notice of Amended Final Results of Administrative Review of Antifriction Bearings (Other than Tapered Roller Bearings) and Parts, 63 Fed. Reg. 8908 (Feb. 23, 1998); Notice of Final Court Decision and Amended Final Results of Antidumping Duty Administrative Reviews of Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, from Japan, 63 Fed. Reg. 17815 (Apr. 10, 1998); Notice of Amended Final Results of Administrative Review of Antifriction Bearings (Other than Tapered Roller Bearings) and Parts, 63 Fed. Reg. 18877 (Apr. 16, 1998).

Commerce thereafter issued instructions to Customs to liquidate Koyo's entries at the final assessment rates as set forth in the final administrative review results. Customs, however, failed to liquidate any of Koyo's ten entries within six months of the published notices in the Federal Register. More than one year after receiving liquidation instructions from Commerce, Customs determined that Koyo's entries were "deemed liquidated" by operation of law under 19 U.S.C. § 1504(d) at the duty rate in effect at the time of entry, which rate was higher than Commerce's final assessment rate. Customs posted notice of the ten deemed liquidations in three separate notices posted on September 24, 1999, December 10, 1999, and December 15, 1999 respectively. Koyo filed three separate protests, protesting Customs' liquidation of all ten of its entries at the higher cash deposit rate rather than at the lower final assessment rate as determined by Commerce in the administrative and judicial reviews.

Koyo's Protest No. 4101-99-100297 ("Protest I") covered five entries made at the Cleveland, Ohio port in 1990 and 1991.[2] At the time of entry, the antidumping orders for these five entries required Koyo to post estimated antidumping duties at the cash deposit rates in effect as of the date of entry, 73.55% or 51.21%. The subsequent administrative review and litigation concluded in 1998 and resulted in final assessment rates of 9.92%, 10.12%, 1.89%, or 3.62%. The following year, on September 10, 1999, Koyo sent Customs a letter reminding Customs to liquidate its entries at the final assessment rates and to refund excess duties to Koyo. Customs posted a bulletin

---

[2] The five entries in Protest I include entry numbers: 885-0162580-5 entered on 10/22/1990; 885-0162805-6 entered on 10/30/1990; 885-0167076-9 entered on 01/31/1991; 885-0168703-7 entered on 03/08/1991; and 885-0168823-3 entered on 03/08/1991.

notice of these five deemed liquidations on September 24, 1999. On October 8, 1999, Customs liquidated each of the five entries at the higher cash deposit rates that Koyo had deposited at the time of entry. Koyo protested the liquidation of the five entries by filing Protest I on November 8, 1999, which was accepted as timely filed by Customs. On June 13, 2002, Customs denied Koyo's Protest I, finding that "the entries were liquidated 'no change' on October 8, 1999" and noting that this "active" liquidation was based on the earlier "deemed liquidation" of the entries.

Koyo's Protest No. 4101-00-100075 ("Protest II") covered four entries made in 1991 also at the Cleveland, Ohio port.[3] At the time of entry, the antidumping orders for these four entries required Koyo to post estimated antidumping duties at the cash deposit rates in effect at the date of entry, 52.17% or 47.63%. The administrative review and litigation concluded in 1998 and resulted in lower final assessments rates of 26.81%. Customs did not liquidate the four entries after Commerce published the final assessment rates, but posted a bulletin notice of these four deemed liquidations on December 10, 1999. On February 4, 2000, Customs liquidated each of the four entries at the higher cash deposit rates Koyo had deposited at the time of entry. Koyo protested Customs' liquidation of these four entries by filing Protest II on February 25, 2000, which Customs accepted as timely filed. On June 13, 2002, Customs denied Koyo's Protest II, citing Protest I and Headquarters Ruling ("HQ") 228712 for its denial.

---

[3]     The four entries in Protest II include entry numbers: 885-0172044-0 entered on 05/22/1991; 885-0174474-7 entered on 07/09/1991; 885-0177206-0 entered on 09/03/1991; and 885-0177264-9 entered on 09/10/1991.

Koyo's Protest No. 4101-00-100284 ("Protest III") covered one entry, 885-0161799-2, made at the Cleveland, Ohio port on September 4, 1990.  At the time of entry, the antidumping order covering this entry required Koyo to post estimated antidumping duties at the cash deposit rate in effect at the time of entry, namely 73.55%.  Subsequent administrative and judicial review resulted in the final assessment rate of 9.92% for this one entry.  Customs failed to liquidate the entry at the posted final assessment rates.  Koyo alleges that sometime in early June 2000, it contacted Customs to inquire about the liquidation of this entry.  According to Koyo, Customs told Koyo that it was unable to liquidate the entry automatically and would enter it manually.  Customs then proceeded to liquidate the entry at the cash deposit rate.  At Koyo's request, Customs faxed a copy of the notice of liquidation to Koyo in June 2000.  Koyo alleges that it requested Customs to provide it with the actual liquidation date and that Customs responded that it manually liquidated the entry on June 6, 2000.  Koyo protested the liquidation of this entry by filing Protest III on August 3, 2000.  Customs posted a bulletin notice of the deemed liquidation on December 15, 2000 stating that the entry was liquidated at the duty rate deposited at entry.  On June 13, 2002, Customs denied Koyo's Protest III, citing once again its denial in Protest I and HQ 228712.

Customs accepted Koyo's three protests as timely filed, but denied the protests by applying the "deemed liquidation" provision of 19 U.S.C. § 1504(d).  Koyo appealed the denial of its three protests to the Court of International Trade.  At the trial court, both Koyo and the government filed motions for summary judgment.  The trial court entered summary judgment in favor of Koyo, relying on Church of the Holy Trinity v. United

<u>States</u>, 143 U.S. 457 (1892)[4] to conclude that the government's construction of § 1504(d) would lead to absurd results and that it could not "accept an interpretation of 19 U.S.C. § 1504(d) which encourages Customs simply to forget or refuse to liquidate and to ignore a court victory favoring an importer as to antidumping duties" thereby allowing Customs to "collect[] duties to which it is not entitled." <u>Koyo Corp. of U.S.A. v. United States</u>, No. 05-152, slip op. at 8, 9 (Ct. Int'l Trade Dec. 1, 2005). After determining that § 1504(d) is not applicable where the deemed liquidation rate is higher than the administrative review rate, the trial court ordered Customs to reliquidate Koyo's ten entries at the final assessment rates determined by Commerce as published in the Federal Register. <u>Id.</u> at 10.

The trial court entered final judgment on December 1, 2005. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II.    ANALYSIS

Summary judgment is appropriate where the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. <u>See</u> Ct. Int'l Trade R. 56(d). In this case, the Court of International Trade granted summary judgment in favor of Koyo, finding no genuine issue of material fact. <u>See</u> <u>Koyo</u>, slip op. at 10. This court reviews a summary judgment decision by the Court of International Trade "for correctness as a matter of law, deciding <u>de novo</u> the proper interpretation of the governing statute and regulations as well as whether genuine

---

⁴    <u>See</u> <u>Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.</u>, 127 S. Ct. 1534, 1550 n.3 (2007) (Stevens, J., concurring).

issues of material fact exist." <u>Texaco Marine Servs., Inc. v. United States</u>, 44 F.3d 1539, 1543 (Fed. Cir. 1994) (internal citations omitted).

**A.**

The two central issues in this case are whether an importer can protest a deemed liquidation and what duty rate applies if the importer properly protests a deemed liquidation. The parties and the trial court focused their arguments on the interpretation of 19 U.S.C. § 1504(d). Section 1504(d) governs the deemed liquidation of entries whose liquidation previously was suspended. The statute provides:

> (d) Removal of suspension
>  . . . when a suspension required by statute or court order is removed, the Customs Service <u>shall liquidate the entry within 6 months</u> after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. <u>Any entry not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record</u>.

19 U.S.C. § 1504(d) (emphasis added).

In <u>Fujitsu General America, Inc. v. United States</u>, we set forth the requirements for deemed liquidation following removal of suspension pursuant to 19 U.S.C. § 1504(d): "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." 283 F.3d 1364, 1376 (Fed. Cir. 2002).

Under our precedent, the rate of duty that applies to a deemed liquidation under 19 U.S.C. § 1504(d) is the duty rate claimed on the importer's entry papers. <u>See</u> <u>Rheem Metalurgica S/A v. United States</u>, 160 F.3d 1357, 1359 (Fed. Cir. 1998) (holding that the duties asserted by the importer at time of entry and therefore the duties that

apply to a deemed liquidation under § 1504(d) include all of the duties claimed on the entry papers); Wolff Shoe Co. v. United States, 141 F.3d 1116 (Fed. Cir. 1998) (holding the same). Thus, the rate of duty that applies to a deemed liquidation under § 1504(d) is the rate of duty that the importer claims on the entry papers and deposits at the time of entry.

The Court of International Trade's holding in the proceeding below was based on an implicit finding that Koyo's entries were deemed liquidated by operation of law pursuant to 19 U.S.C. § 1504(d). The court, however, resorted to the absurdity doctrine from Holy Trinity because of confusion regarding whether an importer can protest a deemed liquidation. The court's absurdity holding was based on the assumption that a deemed liquidation is inherently "final" in that a deemed liquidation cannot, itself, be protested: "There is a question as to whether one can protest a bare 'deemed liquidation,' which occurs by operation of law." Koyo, slip op. at 2-3, n.3. In making this assumption—that an importer may be barred from protesting a deemed liquidation—the court relied on our decision in United States v. Cherry Hill Textiles, 112 F.3d 1550 (Fed. Cir. 1997). Id. at 3 n.3.

In Cherry Hill, however, we held that if an importer's entries were deemed liquidated by operation of law under 19 U.S.C. § 1504(d), an importer or its surety was not required to protest the deemed liquidation in order to be entitled to defend against a government enforcement action on the ground of the deemed liquidation. 112 F.3d at 1560. We narrowly concluded that the deemed liquidation in Cherry Hill was "final and conclusive" against both the importer, surety, and the government because the importer or surety had never protested the deemed liquidation: "Without timely protest, all

liquidations become final and conclusive under 19 U.S.C. § 1514." Id. at 1559 (quoting Juice Farms, Inc. v. United States, 68 F.3d 1344, 1346 (Fed. Cir. 1995)). This court concluded in Cherry Hill that "a 'deemed liquidation' under section 1504 . . . subjects any further collection efforts by the government in connection with the same entry to dismissal for failure to state a claim upon which relief can be granted." Id. (emphasis added). Contrary to the government's present contention, we did not hold in Cherry Hill that an importer is barred from protesting a deemed liquidation under the statutory protest scheme provided to importers by Congress under 19 U.S.C. § 1514.

A deemed liquidation under 19 U.S.C. § 1504(d) is final only in so far as Customs cannot liquidate the entries at any other rate than the rate provided under § 1504(d), "the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer." Thus, when 19 U.S.C. § 1504(d) is triggered, Customs can only assess the duty rate that it assessed on the entries at the time of entry. See Rheem, 160 F.3d at 1359 (finding that Customs could not later liquidate entries at the administrative review rate when the entries had already been deemed liquidated by operation of law pursuant to 19 U.S.C. § 1504(d) at the entry duty rate).

In this case, Customs suspended liquidation of Koyo's ten entries pending administrative review and subsequent litigation. Commerce removed the suspension of liquidation and gave notice to Customs of the removal of the suspension by posting notices in the Federal Register of lower final assessment rates in February and April of 1998. Customs did not liquidate any of Koyo's entries within six months of receiving Commerce's notice of the removal of suspension. Thus, under 19 U.S.C. § 1504(d) as explained by Fujitsu, Koyo's entries were deemed liquidated by operation of law in

August and October of 1998 at the rate of duty deposited by Koyo at the time it entered its merchandise.  We conclude that Koyo's ten entries were deemed liquidated by operation of law pursuant to 19 U.S.C. § 1504(d) at the duty rates asserted by Koyo at the time of entry.

**B.**

We also hold, however, that Koyo, as an importer, had the remedy available under 19 U.S.C. § 1514(a) to protest the deemed liquidation at the duty rates asserted at the time of entry.  Section 1514(a) establishes an importer's protest remedy and provides, with certain exceptions not relevant in this case,

> <u>decisions of the Customs Service</u>, including the legality of all orders and findings entering into the same, as to-- . . . (2) the classification and rate and amount of duties chargeable; . . . (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof; <u>shall be final and conclusive upon all persons</u> (including the United States and any officer thereof) <u>unless a protest is filed in accordance with this section</u> . . . .

19 U.S.C. § 1514(a) (emphasis added).  There is no language in § 1514(a) that bars an importer from formally protesting the amount of duties or the liquidation of entries that result by operation of § 1504(d).

Section 1514(c)(3) sets forth the timeliness requirements for filing such protests. This section also makes no mention of barring protests brought by importers for claims arising from the operation of § 1504(d):

> A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before—(A) notice of liquidation or reliquidation, or (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

Importantly, the implementing regulations for § 1514 with respect to entries deemed liquidated under § 1504(d) clearly show that an importer is entitled to protest a deemed liquidation under § 1514:

> (i) Entries liquidated by operation of law at the expiration of the time limitations prescribed in . . . (19 U.S.C. 1504) . . . shall be deemed liquidated as of the date of expiration of the appropriate statutory period. (ii) The bulletin notice of liquidation shall be posted or lodged in the customhouse within a reasonable period after each liquidation by operation of law and shall be dated as of the date of expiration of the statutory period. (iii) <u>A protest under . . . (19 U.S.C. 1514) . . . shall be filed within 90 days from the date the bulletin notice of liquidation of an entry by operation of law is posted or lodged in the customhouse</u>.

19 C.F.R. § 159.9(c)(2)(i)-(iii) (emphasis added). That an importer has protest remedies under § 1514 to protest a deemed liquidation was acknowledged by this court in <u>Cemex v. United States</u>,

> [Title] 19 U.S.C. § 1504(d) was meant to benefit importers. Therefore, it fits neatly into the Customs protest of liquidation scheme. If a deemed liquidation or any liquidation is adverse to an importer, it has its protest remedies under 19 U.S.C. § 1514 and access to judicial review under 28 U.S.C. § 1581(a).

384 F.3d at 1318 (Fed. Cir. 2004) (quoting <u>Cemex v. United States</u>, 279 F. Supp. 2d 1357, 1362 (Ct. Int'l Trade 2003)); <u>see also</u> <u>Norsk Hydro Canada, Inc. v. U.S.</u>, 472 F.3d 1347, 1362, n.25 (citing to <u>Cemex</u> "with approval to the effect that a deemed liquidation adverse to an importer is protestable" and finding that this court had not yet addressed the specific question of "whether a deemed liquidation is protestable to Customs where . . . a Commerce order has issued requiring Customs to liquidate at a specific rate, but Customs nonetheless ignores this order and allows liquidation to occur at an incorrect rate.").

The government, however, contends that our case law supports its argument that a deemed liquidation is inherently conclusive, final, and binding on all parties in that it

cannot be protested by an importer and that the rate of duty asserted by the importer at entry is the only duty rate that can ever be assessed to entries once the entry has been deemed liquidated by operation of § 1504(d). The government is mistaken. None of the holdings in the cases cited by the government decided or relied on whether an importer can protest an adverse deemed liquidation.

For example, the government relies on Fujitsu to support its contention that Koyo's entries were deemed liquidated by operation of § 1504(d) and also to establish that an importer cannot protest a deemed liquidation. In Fujitsu, Fujitsu filed three protests, alleging that Customs had liquidated its entries at an improper duty rate because its entries were deemed liquidated at the entry rate by operation of 19 U.S.C. § 1504(d). 283 F.3d at 1364. We affirmed that the Court of International Trade did not have jurisdiction over two of Fujitsu's three protests because Fujitsu had failed to file its protest of the deemed liquidations within 90 days after receiving notice of the deemed liquidations as required by 19 U.S.C. § 1514(c)(3). Id. at 1376. We concluded, however, that Fujitsu could have timely protested Customs' deemed liquidations under 19 U.S.C. § 1514(a)(5). Id. We also affirmed the Court of International Trade with respect to Fujitsu's third protest, finding that Fujitsu had timely filed its third deemed liquidation claim within 90 days of notice of the liquidation but that its entries were not deemed liquidated because Customs had liquidated Fujitsu's entries within six months after receiving notice from Commerce, and therefore, § 1504(d) was not triggered. Id. at 1381-82. Rather than supporting the government's argument that a deemed liquidation is "final" in the sense that it cannot be protested by an importer, Fujitsu

supports finding that an importer can avail itself of the statutory and regulatory protest scheme to protest an adverse deemed liquidation that results by operation of § 1504(d).

Similarly, the government relies on NEC Solutions (America), Inc. v. United States, 411 F.3d 1340 (Fed. Cir. 2005) for the same proposition—that a deemed liquidation is inherently conclusive, final, and binding on all parties and is therefore not protestable. NEC, however, is limited to two specific holdings. First, we held that a particular email from Commerce to Customs was sufficient notice to remove the suspension of liquidation for some of NEC's entries and trigger the six-month 19 U.S.C. § 1504(d) deemed liquidation clock. NEC, 411 F.3d at 1347. Second, we held that the Department of Justice's receipt of court opinions lifting the suspension of liquidation for NEC's remaining entries was not sufficient notice to Customs and did not trigger the six-month deemed liquidation clock. Id. Thus, our two specific holdings in NEC do not support the government's proposition that a deemed liquidation is not protestable under 19 U.S.C. § 1514 as the government contends.

The government also relies on Cherry Hill as support for its assertion that a deemed liquidation is "final" in the sense that an importer cannot protest it. Our holding in Cherry Hill as discussed previously, however, was limited to the narrow rule that an importer or its surety did not have to protest a deemed liquidation in order to assert the deemed liquidation issue as a defense against a government enforcement action. 112 F.3d at 1560. Significantly, the party in Cherry Hill did not file a protest of the deemed liquidations. Thus, our holding in Cherry Hill did not address whether an importer was barred by operation of 19 U.S.C. § 1504(d) from filing a protest under 19 U.S.C. § 1514.

Unlike the party in Cherry Hill, Koyo filed protests covering all ten of the deemed liquidations.

Likewise, the government relies on International Trading Co. v. United States, 281 F.3d 1268 (Fed. Cir. 2002) for the proposition that a deemed liquidation is inherently conclusive and is therefore not protestable. However, our holding in International Trading Company was limited to two questions: 1) whether publication in the Federal Register of final administrative review results was sufficient to remove suspension of liquidation and serve as notice to Customs of removal of the suspension; and 2) whether the duty rate that applies to a deemed liquidation is the rate deposited by the importer at the time of entry. 281 F.3d at 1277. We held in the affirmative for both these issues. Id. We did not hold that a deemed liquidation is unprotestable and we did not determine what rate of duty would apply if an importer properly protested a deemed liquidation. Therefore, International Trading Company does not disturb our holding in this case, that Koyo can protest pursuant to 19 U.S.C. § 1514 an adverse deemed liquidation that results by operation of 19 U.S.C. § 1504.

The purpose and legislative history of 19 U.S.C. § 1504 support our holding that Congress did not intend to remove the importer's protest remedy under 19 U.S.C. § 1514 if Customs delays liquidating entries and entries are therefore deemed liquidated by operation of law. As stated by Congress regarding two of the problems that 19 U.S.C. § 1504 was enacted to resolve:

> Under the present law, an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due but be unable to recover the excess for years as he awaits liquidation.

S. Rep. No. 95-778, 95th Cong., 2nd Sess. 31-32 (1978) (emphasis added). Thus, Congress enacted the deemed liquidation statute to prevent Customs from belatedly assessing additional duties and from indefinitely retaining duties deposited in excess. In order to prevent Customs from indefinitely retaining the excess duties deposited by importers at entry, a deemed liquidation must be protestable on the merits under 19 U.S.C. § 1514. The government's interpretation of 19 U.S.C. § 1504 only exacerbates the second problem Congress expressly stated it was trying to redress by enacting 19 U.S.C. § 1504. As interpreted by Customs, operation of 19 U.S.C. § 1504(d) could be used to deny importers a refund of their excess duties if Customs simply fails to liquidate for at least six months any entry for which Customs has received notice that suspension of liquidation has been lifted.

In the case at hand, Commerce lifted the suspension of liquidation for all ten of Koyo's entries and gave notice to Customs of the lifting of the suspension by posting a series of three notices in the Federal Register. Commerce published the first notice on February 23, 1998, the second notice on April 10, 1998, and the third notice on April 16, 1998. Thus, by operation of 19 U.S.C. § 1504 and 19 C.F.R. § 159.9(c)(2)(i), a portion of Koyo's entries were deemed liquidated on August 23, 1998 and October 10, 1998, and Koyo's remaining entries were deemed liquidated on October 16, 1998. Pursuant to 19 C.F.R. § 159.9(c)(2)(ii) and as conceded by Customs in its response to Koyo's Statement of Material Facts as submitted to the Court of International Trade on July 29, 2005, Customs averred that "bulletin notice[s] of these liquidations by operation of law w[ere] manually posted by Customs . . . on September 24, 1999[,] . . . December 10, 1999[,] . . . [and] December 15, 2000." .

In response to Customs' notice of deemed liquidation posted on September 24, 1999, Koyo filed Protest I on November 8, 1999, which was filed within the statutory and regulatory 90-day period and which was accepted as timely filed by Customs. Similarly, in response to Customs' notice of deemed liquidation posted on December 10, 1999, Koyo filed Protest II on February 25, 2000, which was filed within the statutory and regulatory 90-day period and which was accepted as timely by Customs. As the parties do not dispute that Koyo's Protest I and Protest II were timely filed,[5] we find that Koyo properly protested the nine entries deemed liquidated and contested in Protest I and Protest II.

Finally, on August 3, 2000, Koyo filed Protest III, which Koyo claims was filed after it received notice from Customs in June of 2000 that Customs had manually entered the entry in question on June 6, 2000 to reflect the deemed liquidation. There is a genuine issue of material fact regarding whether Koyo's Protest III was timely filed. We therefore remand this issue to the Court of International Trade to determine whether Koyo did in fact receive notice from Customs in June of 2000 that its entry # 885-0161799-2 was deemed liquidated and whether the notice Koyo received is notice that satisfies 19 U.S.C. § 1514(c)(3)(A),(B) (emphasis added):

> A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service <u>within ninety days after but not before</u>—(A) <u>notice</u> of liquidation or reliquidation, or (B) in circumstances where subparagraph (A) is inapplicable, <u>the date of the decision</u> as to which protest is made.

---

[5] The government conceded in supplemental briefing sent to this court and dated January 5, 2007 that "Customs published notices of 'no change' liquidations to reflect the deemed liquidations, and Koyo timely filed protests of the liquidations, except as to one entry."

If the notice Koyo received from Customs in June of 2000 satisfies the notice requirement of 19 U.S.C. § 1514(c)(3)(A) or (B), then Koyo timely filed its Protest III on August 3, 2000.

We note that during its rebuttal at oral argument, the government conceded that an importer had two 90-day protest periods within which to protest a deemed liquidation. The first 90-day protest period commences six months after Customs receives notice of removal of the suspension of liquidation and is the date on which the entry is automatically deemed liquidated by operation of law under 19 U.S.C. § 1504(d). This first protest period seems to fall within 19 U.S.C. § 1514(c)(3)(B), which provides that a protest shall be filed "within ninety days after but not before . . . the date of the decision as to which protest is made." The second protest period commences on the date that Customs gives notice of the deemed liquidation or notice of a liquidation reflecting the deemed liquidation as provided by 19 U.S.C. § 1514(c)(3)(A): "A protest . . . shall be filed with the Customs Service within ninety days after but not before . . . notice of liquidation or reliquidation." Thus, under this second protest period provided by 19 U.S.C. § 1514(c)(3)(A), if Customs gave notice to Koyo before August 3, 2000 that it considered entry # 885-0161799-2 to be deemed liquidated, then Koyo timely filed Protest III.

## C.

The second issue that is central to this case is the question of what duty rate applies to an entry deemed liquidated that is contested in a valid protest. Our case law holds that the rate of duty that applies to a deemed liquidation under 19 U.S.C. § 1504(d) is "the rate of duty, value, quantity, and amount of duty asserted at the time of

entry by the importer of record." See Rheem, 160 F.3d at 1359 (holding that the duties asserted by the importer at time of entry and therefore the duties that apply to a deemed liquidation include all of the duties claimed on the entry papers); Wolff Shoe Co. v. United States, 141 F.3d 1116 (Fed. Cir. 1998) (holding the same). Thus, the rate of duty that applies to a deemed liquidation under 19 U.S.C. § 1504(d) is the rate of duty that the importer claims on the entry papers and deposits at the time of entry.

However, once a party files a valid protest contesting the adverse deemed liquidation, the deemed liquidation statute is unnecessary in determining the proper rate of duty that Customs should apply to entries deemed liquidated, as long as the entries are validly protested. A deemed liquidation makes liquidation final. It does not, however, determine the final duty rate imposed on the imported goods. The only question remaining in a valid protest of a deemed liquidation is, "What duty should have been collected?" The answer to this question and therefore the amount of duty owed on entries adversely deemed liquidated must be based on the antidumping duty rate determined by the administrative and judicial review process, not based on a deemed liquidation rate.

We hold that as provided in 19 U.S.C. § 1675(a)(2)(C), the administrative review determination conducted by Commerce "shall be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by [Commerce's] determination and for deposits of estimated duties." Likewise, if Commerce's final administrative review results are judicially reviewed, then we hold that as 19 U.S.C. § 1516a(e) provides, the entries "shall be liquidated in accordance with the final court decision in the action." We find support for our interpretation and application of 19 U.S.C.

§ 1504(d) in <u>Ambassador Division of Florsheim Shoe v. United States</u>, in which we noted that

> both § 1504 and the provisions respecting countervailing [and antidumping] duties, such as § 1675(a), were enacted as in *pari material* . . . and therefore a legislative intent to have them work harmoniously together, and for neither to frustrate the other, or partially repeal it, is very much to be inferred.

748 F.2d 1560, 1565 (Fed. Cir. 1984).

Our holding that the rate of duty owed on entries is the rate as determined by Commerce or subsequently determined through judicial review, is in harmony with the complex and extensive statutory and regulatory administrative and judicial review process that is integral to the determination of antidumping duty rates. <u>See, e.g.</u>, 19 U.S.C. § 1675 (providing authority to Commerce for administrative determination and review of antidumping duty and countervailing duty orders and rates); 28 U.S.C. § 1581 (providing the Court of International Trade with exclusive jurisdiction over certain determinations made by Commerce and Customs under the Tariff Act, including denials of protests filed pursuant to 19 U.S.C. § 1514). Our holding also comports with Congress' intent to delegate to Commerce the authority to establish special duty rates, leaving Customs only the ministerial capacity to liquidate antidumping duties according to Commerce's directions as determined through the administrative and judicial review process. <u>See</u> <u>Int'l Trading Co</u>, 281 F.3d at 1273.

If Customs' interpretation of 19 U.S.C. § 1504(d) were to stand, then it would render virtually meaningless the entire antidumping duty administrative and judicial determination and review process as provided in the tariff statutes and regulations. For example, in this case, Koyo entered its merchandise between 1990 and 1992. The administrative and judicial review process for determining the antidumping duty rate for

Koyo's ten entries was not completed until 1998. Customs' interpretation of 19 U.S.C. § 1504(d) would render pointless all of Commerce's and Koyo's efforts between 1992 and 1998 in determining the proper rate of duty for Koyo's ten entries.

We stated in International Trading Co. that § 1675(a)(2) "'shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination' . . . . [b]ecause Congress required Customs to base the amounts of the antidumping duty assessments on the contents of the final results as published in the Federal Register." 281 F.3d at 1276. We also stated in International Trading Co., that "[t]he government's position in this case would undermine one of the principle objectives of the 1993 amendments [to § 1504(d)] by giving the government the unilateral ability to extend the time for liquidating entries indefinitely." Id. at 1273.

Under the statutory tariff scheme enacted by Congress, the character of a deemed liquidation is procedural not substantive. Customs should have granted Koyo's Protest I and II and applied Commerce's final review results to determine the duties owed by Koyo. The final review results are the substantive legal bases for assessing antidumping duties. See 19 U.S.C. § 1657; 28 U.S.C. § 1581. If Customs fails to timely implement the final review results by liquidating entries, then the entries are deemed liquidated at the duty assessed at the deposit rate by operation of 19 U.S.C. § 1504(d). The deposit rate is the correct rate of duty assessed for a deemed liquidation under the procedures of 19 U.S.C. § 1504(d), but if it is adverse to the party being assessed the duties because it is contrary to the final review results then it is unlawful and has no substantive effect. Like an unlawful actual liquidation, the deemed liquidation can be protested and the final review results can have effect if the importer timely invokes its

post-liquidation protest remedy under 19 U.S.C. § 1514. If the importer forgoes filing a timely protest, then the deemed liquidation stands and is final against the importer.

The deemed liquidation of Koyo's ten entries are protestable on the merits. As conceded by the government in its briefing papers, the bulletin notices posted by Customs on September 24, 1999, December 10, 1999, and December 15, 1999 were notices of deemed liquidations for all ten of Koyo's entries. Based on the record before us, it is undisputed that Koyo timely protested nine of the ten entries that were deemed liquidated by operation of law pursuant to § 1504(d). For these nine entries that were properly protested before Customs, Customs should have applied the final review results to determine the rate of duty owed by Koyo.

## III.    CONCLUSION

We hold that Koyo's ten entries were deemed liquidated by operation of law pursuant to 19 U.S.C. § 1504(d) six months after Customs received notice of the removal of the suspension of liquidation and Customs did not liquidate Koyo's entries, either on August 23, 1998, October 10, 1998, or October 16, 1998. We also hold that pursuant to 19 U.S.C. § 1514 and 19 C.F.R. § 159.9(c)(2)(iii), Koyo properly protested the deemed liquidations for the entries included in Protest I and Protest II by filing these two protests within 90 days after Customs posted notices of the deemed liquidations. We hold that the rate of duty owed on Koyo's entries that were deemed liquidated and that were properly protested to Customs is the rate of duty determined by the administrative and judicial review process pursuant to 19 U.S.C. § 1675 and 28 U.S.C. § 1581 as posted in the Federal Register on February 23, 1998, April 10, 1998, and April 16, 1998.

Accordingly, we affirm the judgment of the Court of International Trade with regard to the reliquidation of entries included in Protest I and Protest II. Customs is instructed to reliquidate the nine entries covered by Protest I and Protest II at the rate of duty determined in the administrative and judicial reviews as published in the Federal Register. Because we find a material issue of fact regarding whether Koyo timely protested entry # 885-0161799-2 in Protest III and therefore find a material issue of fact regarding whether the Court of International Trade had jurisdiction over Protest III, we remand this issue to the Court of International Trade to resolve it consistent with this opinion.

<u>AFFIRMED-IN-PART, VACATED-IN-PART, and REMANDED</u>

No costs.

# United States Court of Appeals for the Federal Circuit

2006-1226

KOYO CORPORATION OF U.S.A.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

LOURIE, <u>Circuit Judge</u>, dissenting.

I respectfully dissent from the majority's decision affirming the trial court's decision that the entries included in Protest I and II must be reliquidated at the lower duty rates determined by the administrative review process. Section 1504(d), the relevant provision at issue in this appeal, provides that:

> When a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry not liquidated by the Customs Service within 6 months after receiving such notice <u>shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry</u> by the importer of record.

19 U.S.C. § 1504(d) (emphasis added). Based on the plain language of the statute, entries are deemed liquidated by operation of law at the rate asserted at the time of entry in the event that those entries are not liquidated within six months from the date Customs received notice of the removal of suspension of liquidation. In my view, there is nothing in the statutory language indicating that such deemed liquidation only occurs

when the merchandise is entered at a rate of duty that is lower than the final assessment rate determined by Commerce. Nor do I find that following the statute would lead to an absurd result, as the trial court so found. The purpose of the statutory provision is certainty and finality, and those goals are achieved even when the rate asserted at entry is higher than the final assessment rate. While an importer would appear to be penalized by Customs' delay, that is the result of the statutory provision.

While the majority acknowledges that Koyo's entries "were deemed liquidated by operation of law pursuant to 19 U.S.C. §1504(d) at the duty rates asserted by Koyo at the time of entry," op. at 9-10, the majority further holds that "the deemed liquidation statute [becomes] unnecessary in determining the proper rate of duty that Customs should apply to entries deemed liquidated" in the event an importer files a timely protest. Id. at 17. Respectfully, I disagree that the statute warrants such a result. While an importer may file a protest under § 1514(a), the relevant inquiry in the protest is whether Customs properly concluded that the entries were deemed liquidated by operation of law. As we stated in Fujitsu General America, Inc. v. United States, 283 F.3d 1364, 1376 (Fed. Cir. 2002), in order for deemed liquidation to occur, "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." Those three requirements were met here. Accordingly, pursuant to § 1504(d), it is my view that the entries were deemed liquidated by operation of law and should have been liquidated at the duty rates asserted at the time of entry, as provided for by statute.

Thus, for the foregoing reasons, I would reverse the trial court's decision.