# United States Court of Appeals for the Federal Circuit

2007-1291

SHINYEI CORPORATION OF AMERICA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Charles H. Bayar, of Scarsdale, New York, argued for plaintiff-appellant.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief was Jeanne E. Davidson, Director. Of counsel were Michael J. Dierberg, Trial Attorney, of Washington, DC, and Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, of New York, New York. Of counsel on the brief was Edward N. Maurer, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

2007-1291

SHINYEI CORPORATION OF AMERICA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in consolidated case no. 1:00-cv-00130, Senior Judge Nicholas Tsoucalas.

_____

DECIDED:  April 24, 2008

_____

Before MICHEL, Chief Judge, NEWMAN, and MOORE, Circuit Judges.

MICHEL, Chief Judge.

This is our second opinion in litigation over the amount of antidumping duties that Shinyei Corporation of America ("Shinyei") owes on certain ball bearings entered by Shinyei in 1990-1991.  In our first opinion, in 2004, we reversed the Court of International Trade's judgment of dismissal—grounded on the view that the actual liquidation of Shinyei's entries deprived that court of jurisdiction over Shinyei's claim under the Administrative Procedure Act that the Department of Commerce had issued erroneous liquidation instructions, thus causing Shinyei to pay excessive duties—and we remanded "for further proceedings on the merits of Shinyei's claim."  Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1299 (Fed. Cir. 2004) ("Shinyei-CAFC(I)").

On remand, the Court of International Trade again dismissed before reaching the merits, holding that Shinyei's entries were <u>deemed</u> liquidated before they were <u>actually</u> liquidated, and that the <u>deemed</u> liquidation barred Shinyei's claim regarding erroneous liquidation instructions and rendered Shinyei's administrative protests to liquidation untimely. Shinyei filed a second appeal, and we heard oral argument on February 5, 2008. We now reverse for the second time—holding that deemed liquidation did not bar Shinyei's Administrative Procedure Act claim any more than did actual liquidation, and that Shinyei's administrative protests were not untimely—and we again remand with instructions to the Court of International Trade to <u>reach the merits of Shinyei's case</u>.

BACKGROUND

*A.    Antidumping Duty Determinations, Liquidation Instructions, and Liquidation*

This appeal requires careful distinction between the different challenges that an importer may bring against the United States in connection with the determination and assessment of antidumping duties. Accordingly, a brief review of the relevant legal framework is useful before we approach Shinyei's case.

"To protect domestic industries from unfair competition by imported products, United States law imposes a duty on dumped goods, that is, goods sold in this country at a price lower than they sell for in their home market." <u>Fed. Mogul Corp. v. United States</u>, 63 F.3d 1572, 1575 (Fed. Cir. 1995). If Commerce determines that a particular good is being dumped, and if the International Trade Commission also determines that the dumping has injured or threatens to injure a domestic industry, then Commerce issues an antidumping order, imposing a duty on the good equal to the difference

between the foreign market value of the good and its United States price. Zenith Elecs. Corp. v. United States, 988 F.2d 1573, 1576 (Fed. Cir. 1993).

When an importer enters goods covered by an antidumping order, the importer generally must make a cash deposit of estimated antidumping duties. See 19 U.S.C. § 1673e(a)(3). The final amount owed by the importer is not fixed, however, until the entry is liquidated. See 19 C.F.R § 159.1 ("Liquidation means the final computation or ascertainment of the duties (not including vessel repair duties) or drawback accruing on an entry."). The final amount may vary from the amount deposited, because an interested party may request an administrative review of Commerce's antidumping order before liquidation occurs. See 19 U.S.C § 1675; see also Consol. Bearings Co. v. United States, 348 F.3d 997, 1000 (Fed. Cir. 2003). Certain interested parties may also challenge Commerce's antidumping duty determinations in the Court of International Trade, and liquidation may be enjoined pending the outcome of an administrative review and litigation. See 19 U.S.C. § 1516a; 28 U.S.C. § 1581(c).

Typically, once Commerce has finished its administrative review determination (and once any litigation under section 1516a has concluded), Commerce will send instructions to the United States Bureau of Customs and Border Protection ("Customs") to liquidate the entries made during the period of review covered by the determination. Because the Tariff Act provides that the final determination "shall be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination," 19 U.S.C. § 1675(a)(2)(C), Commerce's liquidation instructions "must correctly reflect the final administrative review determination so that the determination is the basis for the assessment at liquidation; if Commerce instructions are inaccurate or

incorrect, Customs will liquidate the entries according to the improper instructions and the determination will not be the basis for the assessment of duties." Shinyei-CAFC(I), 355 F.3d at 1306. If an importer believes that the liquidation instructions issued by Commerce to Customs do not correctly reflect the final determination, the importer may challenge those instructions in the Court of International Trade under the Administrative Procedure Act ("APA"). See id.; Consol. Bearings, 348 F.3d at 1002.

Once Customs receives liquidation instructions from Commerce—and unless liquidation is enjoined—Customs will actually liquidate the entries made during the review period covered by Commerce's determination, "collect[ing] any increased duties due or refund[ing] any excess of the estimated duties deposited on entry." Wolff Shoe Co. v. United States, 141 F.3d 1116, 1118 (Fed. Cir. 1998). "By statute, Customs must complete liquidation of an entry within certain time limits. If Customs fails to do so, the entry is 'deemed liquidated' (i.e., liquidated by operation of law)," at the amount of duties deposited upon entry (i.e., without any increase or decrease from the estimated duties). Id. (citing 19 U.S.C. § 1504). An importer who believes that Customs has erred in liquidating the importer's entries (for example, by collecting higher duties than were actually due) may file an administrative protest with Customs after liquidation. See 19 U.S.C. §§ 1514, 1515. If Customs denies the protest, the importer may contest the denial in the Court of International Trade. See 28 U.S.C. § 1581(a).

Keeping in mind this framework, and the distinctions between and among a challenge to Commerce's antidumping duty determination under 19 U.S.C. § 1516a, a challenge to Commerce's liquidation instructions under the APA, and a challenge to

Customs' denial of a liquidation protest brought under 19 U.S.C §§ 1514 and 1515, we now turn to Shinyei's case.

*B. Relevant Facts and Procedural History*

A detailed discussion of the facts giving rise to this litigation and leading up to Shinyei's first appeal appears in our opinion in Shinyei-CAFC(I), 355 F.3d at 1299-304. We presume familiarity with that opinion, but briefly review this earlier history before turning to subsequent developments.

*1. Shinyei Enters Ball Bearings from Japan*

Commerce issued an antidumping order on ball bearings from Japan in 1989. Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan, 54 Fed. Reg. 20,904 (May 15, 1989). During the second administrative review period, from May 1, 1990 to April 30, 1991, Shinyei imported and entered ball bearings from Japan, making about 100 entries and paying antidumping duty deposits at the rate of 45.83% ad valorem.

In 1992, Commerce published final results of the review for the second administrative review period, which ordinarily would have been followed by liquidation of the entries made during that period. Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews, 57 Fed. Reg. 28,360 (June 24, 1992). But Commerce's review results were challenged by importers (not including Shinyei) in the Court of International Trade, and that court preliminarily enjoined liquidation of entries made during the second administrative review period (including Shinyei's entries) pending a final court

decision.  See Fed. Mogul Corp. v. United States, No. 92-06-00422 (Ct. Int'l Trade July 14, 1992) (issuing a preliminary injunction).

A final court decision did not come until 1997, when we affirmed Commerce's review results as they had been amended in the interim.  See Torrington Co. v. United States, 127 F.3d 1077, 1081 (Fed. Cir. 1997).  On February 23, 1998, Commerce published notice of the final Torrington decision and of the court-adjudicated review results ("Amended Review Results") in the Federal Register.  Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Amended Final Results of Antidumping Duty Administrative Reviews, 63 Fed. Reg. 8908 (Feb. 23, 1998).  Also in 1998, Commerce issued instructions to Customs to liquidate entries made during the 1990-1991 review period at the final antidumping rates set by the Amended Review Results (the "1998 Liquidation Instructions").

Because these final antidumping duty rates were substantially lower than the 45.83% ad valorem rate at which Shinyei had deposited duties in 1990-1991, Shinyei stood to receive a refund for each of its entries that Customs would liquidate pursuant to Commerce's 1998 Liquidation Instructions.  But for reasons that are not clear—indeed, exactly what happened and why are the very questions of the merits that the Court of International Trade has twice declined to reach—the 1998 Liquidation Instructions covered some but not all of Shinyei's 1990-1991 entries of ball bearings, and Customs actually liquidated only those entries covered by the 1998 Liquidation Instructions.  As discussed below, the remaining entries were deemed liquidated—i.e., were liquidated by operation of law—in August of 1998, though at that time it may not have been clear that deemed liquidation had occurred.

## 2. *Shinyei Files Suit in the Court of International Trade*

On March 23, 2000, Shinyei filed suit against the United States in the Court of International Trade in case no. 1:00-cv-00130 (the "'130 case"), asserting two claims in the alternative. In one claim, Shinyei challenged Commerce's 1998 Liquidation Instructions under the APA, alleging that by failing to include all of Shinyei's entries in those instructions, Commerce had acted contrary to the requirement of 19 U.S.C. § 1675(a)(2)(C) that Commerce's antidumping duty determination "shall be the basis" for the assessment of antidumping duties on entries of merchandise covered by the determination. In the alternative claim, Shinyei challenged Customs' failure to actually liquidate, alleging that Commerce's 1998 Liquidation Instructions had indeed covered all of Shinyei's entries from the 1990-1991 period, and seeking a writ of mandamus to direct Customs to actually liquidate the disputed entries at the relatively low final antidumping rates.

On August 1, 2000, while Shinyei's '130 case was pending, Commerce issued "clean up" liquidation instructions to Customs, directing Customs to liquidate any remaining unliquidated entries of ball bearings from the 1990-1991 review period "at the deposit rate." Customs then <u>actually</u> liquidated Shinyei's remaining entries from that period, at the 45.83% deposit rate, per the "clean up" instructions. In response, Shinyei filed an amended complaint in the '130 case, withdrawing its now-moot request for a writ of mandamus to force liquidation, but maintaining its claim that Commerce had erred, and seeking reliquidation at the final antidumping rates. Shinyei also filed

protests of the actual liquidations with Customs under 19 U.S.C. § 1514(a).[1] Customs later denied many of those protests, and Shinyei sought judicial review in the Court of International Trade in case nos. 1-01-cv-00707, 1:03-cv-00688, and 1:04-cv-00252 (collectively, the "Customs-Error cases").

### 3. The Court of International Trade Dismisses Shinyei's '130 Case

In 2002, the United States moved to dismiss Shinyei's complaint in the '130 case. The United States argued that because Customs had actually liquidated Shinyei's entries under the "clean up" instructions, the actual liquidation was final and conclusive, and prevented the court from assuming or maintaining jurisdiction over Shinyei's APA claim. Alternatively, the United States argued, Shinyei's entries were <u>deemed</u> liquidated, pursuant to 19 U.S.C. § 1504(d), on August 23, 1998—six months after Commerce published notice of the Amended Review Results—and the deemed liquidation was final and conclusive, precluding judicial review of Shinyei's APA claim.

On February 14, 2003, the Court of International Trade granted the United States' motion to dismiss. <u>Shinyei Corp. of Am. v. United States</u>, 248 F. Supp. 2d 1350 (Ct. Int'l Trade 2003) ("<u>Shinyei-CIT(I)</u>"). Relying on cases interpreting our holding in <u>Zenith Radio Corp. v. United States</u>, 710 F.2d 806 (Fed. Cir. 1983), the court held that "Shinyei's claim and the relief requested became moot as a result of Customs' [actual] liquidation of the entries at issue," depriving the court of subject matter jurisdiction. <u>Shinyei-CIT(I)</u>, 248 F. Supp. 2d at 1358-59. Notably, the Court of International Trade

---

[1] As Shinyei explained to the Court of International Trade, Shinyei filed the § 1514(a) protests "strictly to preserve its rights in case it should ultimately be decided that the . . . liquidations [at issue] reflect Customs Error rather than Commerce Error." <u>Shinyei Corp. of Am. v. United States</u>, 248 F. Supp. 2d 1350, 1354 (Ct. Int'l Trade 2003).

did not consider the United States' argument about deemed liquidations. See <u>Shinyei-CIT(I)</u>, 248 F. Supp. 2d at 1361 n.22 ("The Court does not reach the issue of 'deemed liquidations' of the entries at issue since both Defendant and Shinyei agree that the entries at issue were in fact liquidated.").

*4.      We Reverse and Remand for Further Proceedings*

Shinyei appealed the Court of International Trade's dismissal of the '130 case for lack of jurisdiction, and on January 20, 2004, we reversed. See <u>Shinyei-CAFC(I)</u>, 355 F.3d at 1297. We reviewed our earlier statement in <u>Zenith Radio</u> that "once liquidation occurs, a subsequent decision by the trial court on the merits of Zenith's challenge [to Commerce's <u>determination</u> of a duty rate under section 516A of the Tariff Act] can have no effect on the dumping duties assessed on [Zenith's entries]," 710 F.2d at 810, and we explained that this holding was "explicitly based on the liquidation and injunction provisions in section 516A." <u>Shinyei-CAFC(I)</u>, 355 F.3d at 1309.[2]

Here, since Shinyei did not challenge Commerce's duty <u>determination</u> under section 516A of the Tariff Act, but rather challenged Commerce's <u>liquidation instructions</u> as inconsistent with an antidumping duty determination that Shinyei conceded to be correct, we explained that our holding in <u>Zenith Radio</u> was simply inapplicable. See <u>id.</u> ("a challenge to Commerce instructions on the ground that they do not correctly implement the published, amended administrative review results, 'is not an action

---

[2]      See, e.g., 19 U.S.C. § 1516a(c)(1) ("Unless such liquidation is enjoined by the court under paragraph (2) of this subsection, entries of merchandise . . . shall be liquidated in accordance with the determination of the Secretary . . . if they are entered, or withdrawn from warehouse, for consumption on or before the date of publication in the Federal Register by the Secretary or the administering authority of a notice of a decision of the United States Court of International Trade, or of the United States Court of Appeals for the Federal Circuit, not in harmony with that determination.").

defined under section 516A of the Tariff Act'" (quoting Consol. Bearings, 348 F.3d at 1002)); see also Mukand Int'l, Ltd. v. United States, 502 F.3d 1366, 1369 (Fed. Cir. 2007) ("[O]ur recent decision in [Shinyei-CAFC(I)] makes clear that the effect of liquidation under the injunction and liquidation provisions of section 516a does not divest the Court of International Trade of section 1581(i)(4) jurisdiction over an otherwise proper action for reliquidation.").

We held in Shinyei-CAFC(I) that despite Customs' actual liquidation of Shinyei's entries (pursuant to Commerce's "clean-up" instructions), the Court of International Trade retained jurisdiction over Shinyei's '130 case under 28 U.S.C § 1581(i)(4), the court's catch-all jurisdictional provision, covering challenges to Commerce's "administration and enforcement" of duty laws. 355 F.3d at 1305. We also held that Shinyei had a cause of action under the APA and that nothing in the trade laws precluded the relief requested by Shinyei for Commerce's alleged error—new instructions from Commerce to Customs to reliquidate Shinyei's entries. Remanding the case, we wrote that "[t]he Court of International Trade must reach the merits of Shinyei's case to determine if Shinyei is indeed entitled to the requested relief." Id. at 1311.

Notably, we declined to reach the issue of deemed liquidation, because the trial court had not decided the issue and because "the parties concede[d] that the subject entries were actually liquidated." Id. at 1308 n.5. Also of note, we explained that because Shinyei filed the '130 case before actual liquidation of its entries, the trial court was incorrect to refer to Shinyei as a party who "sleep[s] on their rights and permit[s] liquidation to occur." Id. at 1309 (quoting Shinyei-CIT(I), 248 F. Supp. 2d at 1360).

*5.    The Court of International Trade Consolidates and Again Dismisses*

On remand, the Court of International Trade consolidated Shinyei's '130 case with Shinyei's three Customs-Error cases.  The United States defended against the consolidated '130 case on the ground—not previously adjudicated by either the trial court or this court—that Shinyei's entries were deemed liquidated on August 23, 1998, and that this deemed liquidation was final and conclusive, precluding Shinyei from thereafter claiming Commerce or Customs error in connection with the liquidated entries.  In May of 2006, Shinyei filed a motion for partial summary judgment to dispose of this deemed-liquidation defense, agreeing that its entries were deemed liquidated (in 1998) before they were actually liquidated (beginning in 2000), but arguing that the deemed liquidation was no more final or conclusive than an actual liquidation as against Shinyei's claims.  The United States opposed Shinyei's motion and filed a cross-motion for summary judgment on the basis of the deemed-liquidation defense.

On April 20, 2007, the Court of International Trade ruled on the cross-motions for summary judgment, denying Shinyei's motion and granting summary judgment to the United States.  Shinyei Corp. of Am. v. United States, 491 F. Supp. 2d 1209, 1220 (Ct. Int'l Trade 2007) ("Shinyei-CIT(II)").  Despite having previously declined to consider the deemed-liquidation issue (and instead having held the actual liquidations effective), the court now changed course, holding that because Shinyei's entries "were deemed liquidated by operation of law, the final duty [owed] by Shinyei was the rate and amount of duty deposited at the time of entry or withdrawal from warehouse, not the rate of duty determined by the administrative review."  Id. at 1220 (emphasis in original).  Concluding that the deemed liquidation was final, the court held that the deemed

liquidation statute thus precluded review of Shinyei's APA claim regarding Commerce's liquidation instructions.

The court also dismissed Shinyei's claims of Customs error, on the ground that Shinyei failed to file a timely administrative protest of the August, 1998 deemed liquidation. Over Shinyei's objection that Customs was required to give Shinyei notice of the deemed liquidation before the time to protest would commence, the court held that no such notice was required because "[i]n the instant matter, Customs was not aware of the Deemed Liquidation, and thereby could not post notice in the Bulletin." Id. Further, in contrast to our statement in Shinyei-CAFC(I) that Shinyei had not slept on its rights, the Court of International Trade noted on remand that it was "particularly troubled by Shinyei's delay in seeking relief." Shinyei-CIT(II), 491 F. Supp. 2d at 1220. The court explained that in its view, Commerce's February 23, 1998 announcement of the Amended Review Results, published in the Federal Register, effectively put Shinyei on notice that its entries would be deemed liquidated in six months at the deposit rate unless Shinyei took action first. Therefore, the court wrote, Shinyei "could have sought mandamus" before August 23, 1998 "to compel liquidation" at the Amended Final Review rates. Id.

Finally, the Court of International Trade granted summary judgment to the United States on a counterclaim, filed by the United States in one of the Customs-Error cases, seeking recovery of a refund Customs had given Shinyei upon granting one of Shinyei's protests in part. The court explained that because the entries in question "had already been liquidated by operation of law, and at the duty rate deposited at the time of entry, over two years before Customs had mistakenly 'actually' liquidated the [entries] . . .

Customs had erred in granting the refund to Shinyei[, and a]s such, the Government is entitled to recover" the refund plus interest. Id. at 1222.

Shinyei filed a timely appeal from the court's April 20, 2007 judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

A. *Standard of Review*

We review the Court of International Trade's grant of summary judgment de novo, including by deciding de novo the proper interpretation of governing statutes and regulations. Orlando Food Corp. v. United States, 423 F.3d 1318, 1320 (Fed. Cir. 2005); NEC Solutions (Am.), Inc. v. United States, 411 F.3d 1340, 1344 (Fed. Cir. 2005). Here, the court's summary judgment depended on its holdings that, where an importer's entry has been deemed liquidated under 19 U.S.C. § 1504(d), (1) this statute precludes judicial review of the importer's claim under the APA that Commerce's earlier liquidation instructions failed to comply with 19 U.S.C. § 1675(a)(2)(C), and (2) Customs is not obligated to give the importer notice of the deemed liquidation if Customs is not "aware of" the deemed liquidation. We review each of these holdings without deference, and explain why each was incorrect.

B. *Deemed Liquidation and Commerce Error*

Judicial review under the APA is precluded if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. In Shinyei-CAFC(I), we held that the liquidation of Shinyei's entries did not preclude judicial review of Shinyei's Commerce-error claim under the APA, because the Tariff Act does not expressly or impliedly forbid the relief sought by Shinyei for erroneous

liquidation instructions—namely, "reliquidation of the subject entries at the lower rate so [Shinyei] can receive a refund of the overpaid duties." 355 F.3d at 1306, 1310 n.8 (explaining that "'reliquidation' is the re-calculation of the duties or drawback accruing on an entry"). We acknowledged that the Tariff Act does not explicitly provide for this relief, but wrote that "[w]e reject the [United States'] suggestion that the statute's silence as to reliquidation in the context of Commerce error can be construed as a prohibition of reliquidation in such cases." Shinyei-CAFC(I), 355 F.3d at 1312.

Although in Shinyei-CAFC(I) we assumed that Shinyei's entries had been actually liquidated pursuant to Commerce's "clean-up" instructions, and we therefore did not consider the section of the Tariff Act concerning deemed liquidation, we now hold that nothing in the deemed-liquidation statute forbids the Court of International Trade from ordering reliquidation as a remedy for Commerce's failure to comply with 19 U.S.C. § 1675(a)(2)(C) in its liquidation instructions to Customs.

The deemed-liquidation statute, 19 U.S.C. § 1504, was enacted in 1978. See Pub. L. No. 95-410, § 209(a), 92 Stat. 888, 902 (1978). "The prior law had been that Customs might delay liquidation as long as it pleased, and with or without a formal suspension notice." Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560, 1562 (Fed. Cir. 1984). "In Ambassador, we noted that Congress enacted the statute because of 'the uncertainty importers were being kept in, often for years, as to whether they might face further exactions, or when the refunds to which they might be entitled would be paid.'" Wolff Shoe, 141 F.3d at 1118-19 (internal citations omitted). Thus, as we have explained, "[t]he primary purpose of section 1504 was to 'increase certainty in the customs process for importers, surety companies, and other third parties

with a potential liability relating to a customs transaction.'"  Int'l Trading Co. v. United States, 281 F.3d 1268, 1272 (Fed. Cir. 2002) (quoting Dal-Tile Corp. v. United States, 829 F. Supp. 394, 399 (Ct. Int'l Trade 1993)).

Here, the parties agree that Shinyei's entries were deemed liquidated in 1998 under subsection (d) of the deemed liquidation statute, which applies after liquidation has been suspended pending litigation.  In 1998 this subsection read as follows.

> Except as provided in section 751(a)(3) [19 U.S.C. § 1675(a)(3)], when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(d) (1994).

This statute does not discuss reliquidation of an entry deemed liquidated— reliquidation is neither expressly provided for nor expressly prohibited.   Yet the Court of International Trade held that judicial review of Shinyei's APA claim was precluded by this section, reasoning that "[w]hen courts have determined that entries were deemed liquidated under 19 U.S.C. 1504(d), they have previously set aside Customs' actual liquidation and have treated the deemed liquidation as being final," and citing four cases in support of this proposition.  Shinyei-CIT(II), 491 F. Supp. at 1220.

The cases relied on by the Court of International Trade, however, do not hold or suggest that entries deemed liquidated under section 1504(d) may never be reliquidated, even where the deemed liquidation resulted from Commerce's error in issuing liquidation instructions.  Rather, these cases hold only that when an entry is deemed liquidated, the duty rate is the deposit rate, and Customs may not recover

additional duties from the importer thereafter. See NEC Solutions, 411 F.3d at 1343 ("[B]ecause Customs did not liquidate within six months, the entries should have been deemed liquidated[, and thus] NEC is entitled to a refund of any additional duties imposed. . . ."); Int'l Trading Co., 281 F.3d at 1271 (affirming holding of deemed liquidation) ("ITC [the importer] . . . contend[s] that the entries should be deemed liquidated at the deposit rate."); United States v. Cherry Hill Textiles, 112 F.3d 1550, 1560 (Fed. Cir. 1997) ("In cases in which a liquidation has become final, the government cannot seek to recover additional duties simply by making a new liquidation of the original entry."); Am. Int'l Chem., Inc. v. United States, 387 F. Supp. 2d 1258, 1269-1270 (Ct. Int'l Trade 2005) ("Because Customs did not liquidate the four entries . . . at issue in this action within six months from the date Customs received notice of the removal of the suspension of liquidation, the entries liquidated by operation of § 1504(d) at the zero rate of antidumping duty asserted by plaintiff at the time of entry[, and] Plaintiff, therefore, is entitled to a refund . . . ."); cf. SKF USA, Inc. v. United States, 512 F.3d 1326, 1331 (Fed. Cir. 2007) ("[S]ection 1504(d) mandates deemed liquidation at the cash deposit rate regardless of whether the cash deposit rate is higher or lower than the rate instructed by Commerce. . . .").

Indeed, we recently confirmed that "[u]nder the statutory tariff scheme enacted by Congress, the character of a deemed liquidation is procedural not substantive." Koyo Corp. of U.S.A. v. United States, 497 F.3d 1231, 1242 (Fed. Cir. 2007). "The deposit rate is the correct rate of duty assessed for a deemed liquidation under the procedures of 19 U.S.C. § 1504(d), but if it is adverse to the party being assessed the duties

because it is contrary to the final review results then it is unlawful and has no substantive effect." Id. at 1242-43.[3]

Although the Koyo case concerned a claim of Customs error rather than Commerce error, this core holding—that a deemed liquidation is unlawful and of no substantive effect if it is contrary to final review results—is equally applicable in the context of Shinyei's APA claim. Assuming that Shinyei's entries were covered by the Amended Review Results, their deemed liquidation at the deposit rate was unlawful because that liquidation was contrary to the Amended Review Results, which set forth lower duty rates than the deposit rate. See Shinyei-CAFC(I), 355 F.3d at 1302 ("If Shinyei's entries were indeed covered by the Amended Review Results, as it claims, there was presumably an error somewhere in the instruction/liquidation process."). If there was an error in the instruction process, then Shinyei is entitled to a judgment ordering reliquidation pursuant to new, correct instructions. Nothing in the deemed-liquidation statute forbids this relief on the facts as alleged. Thus, regardless of whether the disputed entries are considered to have been deemed liquidated or actually liquidated, the Court of International Trade must reach the merits of Shinyei's Commerce-error claim before the court can decide whether this claim supports the remedy of reliquidation.

---

[3] Our opinion in Koyo issued while Shinyei's appeal was pending. The United States urges us to remand this case without decision, so that the Court of International Trade may reconsider its judgment in light of Koyo. But because the issues on appeal are legal, not factual, we see no need to remand—we are fully capable of evaluating the impact of Koyo on the proper interpretation of statutes and regulations.

*C.* *Deemed Liquidation and Customs Error*

As an alternative to its Commerce-error claim, Shinyei alleges that Commerce's liquidation instructions <u>did</u> correctly reflect the Amended Review Results regarding the disputed entries, and therefore the "error somewhere in the instruction/liquidation process" was Customs' error. To preserve this argument, Shinyei filed protests of Custom's actual liquidations under 19 U.S.C. §§ 1514 and 1515, and then filed suit when many of those protests were denied. These Customs-Error cases were not before us in <u>Shinyei-CAFC(I)</u>, but were consolidated with Shinyei's '130 case on remand and were dismissed in <u>Shinyei-CIT(II)</u>.

On appeal, Shinyei argues that the Court of International Trade was wrong to hold that the deemed liquidation of Shinyei's entries was "final" in the sense that it barred Shinyei from pursuing its Customs-error claim, and was wrong to hold that Customs need not give an importer notice of a deemed liquidation of which Customs itself is "not aware." We agree with Shinyei, and hold that the Court of International Trade must reach the merits of the Customs-error claim.

We recently explained in <u>Koyo</u> that a deemed liquidation may properly be protested to obtain reliquidation in accordance with Commerce's final review results. "Like an unlawful actual liquidation, the deemed liquidation can be protested and the final review results can have effect if the importer timely invokes its post-liquidation protest remedy under 19 U.S.C. § 1514." 497 F.3d at 1234, 1237 ("There is no language in § 1514(a) that bars an importer from formally protesting the amount of duties or the liquidation of entries that result by operation of § 1504(d).").

Any protest of a deemed liquidation must be filed within a time limit, however. "If the importer forgoes filing a timely protest, then the deemed liquidation stands and is final against the importer." Koyo, 497 F.3d at 1243. The time limit for filing is prescribed by statute, and at the relevant time read as follows.

> (3) A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service <u>within ninety days after but not before</u>—
>    (A) <u>notice</u> of liquidation or reliquidation, or
>    (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

19 U.S.C. § 1514(c)(3) (1994) (emphases added).

In Koyo, we noted that the United States conceded that this statute provides two time periods within which an importer may protest a liquidation. "The first 90-day protest period," under § 1514(c)(3)(B), "commences six months after Customs receives notice of removal of the suspension of liquidation," i.e., commences on "the date on which the entry is automatically deemed liquidated by operation of law under 19 U.S.C. § 1504(d)," while "[t]he second protest period commences on the date that Customs gives notice of the deemed liquidation or notice of a liquidation reflecting the deemed liquidation" and expires ninety days thereafter. Koyo, 497 F.3d at 1241.

The notice from Customs to the importer which triggers this second ninety-day protest period is not optional. As we explained in <u>Norsk Hydro Canada, Inc. v. United States</u>, 472 F.3d 1347 (Fed. Cir. 2006), "[i]n the process of liquidating entries, Customs <u>must</u> give parties proper notice, and this is so whether the liquidation is actual or deemed." Id. at 1351 (emphasis added). Indeed, Customs has adopted a regulation in harmony with section 1514(c)(3)(A), providing that Customs <u>shall</u> give bulletin notice to

an importer when an entry is deemed liquidated, and that this notice starts the clock running on the importer's time to protest the liquidation.

> (i) Entries liquidated by operation of law at the expiration of the time limitations prescribed in section 504. Tariff Act of 1930, as amended (19 U.S.C. 1504), and set out in [19 C.F.R.] §§ 159.11 and 159.12, shall be deemed liquidated as of the date of expiration of the appropriate statutory period.
>
> (ii) The bulletin notice of liquidation shall be posted or lodged in the customhouse within a reasonable period after each liquidation by operation of law and shall be dated as of the date of expiration of the statutory period.
>
> (iii) A protest under section 514, Tariff Act of 1930, as amended (19 U.S.C. 1514), and part 174 of this chapter shall be filed within 90 days from the date the bulletin notice of liquidation of an entry by operation of law is posted or lodged in the customhouse.

19 C.F.R § 159.9(c)(2) (emphasis added).

Here, Shinyei's entries were deemed liquidated in August of 1998, six months from the date Commerce published notice of the Amended Review Results in the Federal Register. At that time, however, the fact of the deemed liquidation may not have been clear to the parties, because we had not yet decided that publication in the Federal Register was sufficient to start the deemed-liquidation clock running under 19 U.S.C. § 1504(d). See Int'l Trading Co., 281 F.3d at 1276-77 (Fed. Cir. 2002). Thus, Shinyei apparently never filed protests directed at the deemed liquidation per se, and Customs apparently never posted bulletin notice of the deemed liquidation. Instead, Shinyei filed the original '130 case in 2000, seeking a writ of mandamus to force actual liquidation of its entries, and then filed protests directed to Customs' actual liquidations (pursuant to Commerce's "clean up" instructions).

Shinyei now argues that because Customs never posted bulletin notice of the deemed liquidation, Shinyei's protest period under 19 U.S.C. § 1514(c)(3)(A) has not yet expired. The United States responds that if this is so, then Shinyei's second protest period has not yet begun, and the Customs-error claim is not ripe, because the statute allows for protest "within ninety days after but not before" notice is given. 19 U.S.C. § 1514(c)(3)(A) (emphasis added). The Court of International Trade held that there is no second protest period at all in this case, because Customs was "not aware of the deemed liquidation at the time of its occurrence" and thus was not required to post notice of it. Shinyei-CIT(II), 491 F. Supp. 2d at 1220. The court reasoned that because the deemed-liquidation statute's purpose is to "bring finality to the duty assessment process . . . allowing the notification regulations set forth in 19 C.F.R. § 159.9(c)(2) to supercede such a finality" by prolonging an importer's time to protest would "run counter to the statute," and thus Shinyei was not entitled to notice here. Id.

This holding turns the deemed-liquidation statute, meant to "increase certainty in the customs process for importers," Int'l Trading Co., 281 F.3d at 1272 (emphasis added), on its head. Customs was required by regulation to give Shinyei notice of the 1998 deemed liquidation, and to the extent that Customs did not post notice because it did not appreciate in 1998 that deemed liquidation had occurred (because we had yet to issue International Trading Co.), it makes little sense to hold that therefore Shinyei may not protest this allegedly unlawful deemed liquidation. Rather, Shinyei would be entitled

to protest once Customs were to become "aware" of the liquidation and were to post notice.[4]

However, we need not worry about such counterfactuals, because Customs actually liquidated the disputed entries at the same duty rate at which the entries were deemed liquidated—namely, the deposit rate—and thus the actual liquidations accurately reflected the deemed liquidation (albeit serendipitously). Given this unique circumstance, and given that Shinyei filed timely protests of the actual liquidations, we may treat those protests—as a matter of law—as timely protests of the deemed liquidation. Cf. Koyo, 497 F.3d at 1241 (Second protest period begins "on the date that Customs gives notice of the deemed liquidation or notice of a liquidation reflecting the deemed liquidation.") (emphasis added); Fujitsu Gen. Am. v. United States, 283 F.3d 1364, 1379 (Fed. Cir. 2002) (deciding "as a matter of law, [when] . . . Customs receive[d] notice of the removal of the suspension of liquidation") (emphasis added).

Because Shinyei was entitled to protest the deemed liquidation and did so timely, the Court of International Trade was wrong to dismiss Shinyei's Customs-error claims on summary judgment. Only by reaching the merits—i.e., by determining whether the deemed liquidation was unlawful and thus whether Customs should have granted Shinyei's protests—can the court determine whether Shinyei is entitled to reliquidation.

---

[4] Indeed, Customs is always "aware" of a deemed liquidation under § 1504(d), because liquidation does not happen under this statute until Customs has first "receiv[ed] notice of the removal [of a suspension of liquidation] from the Department of Commerce, other agency, or a court with jurisdiction over the entry," and has then failed to actually liquidate within a prescribed time "after receiving such notice." 19 U.S.C. § 1504(d). The Court of International Trade recognized that publication of the Amended Review Results served as notice of the removal of suspension in this case, and held that therefore "Shinyei should have been aware of the inevitability of deemed liquidation," Shinyei-CIT(II), 491 F. Supp. 2d at 1220, but the court inexplicably did not hold that Customs should similarly have been aware of this inevitability.

Likewise, the Court of International Trade was wrong to grant summary judgment to the United States on its counterclaim for recovery of a refund granted in connection with one of Shinyei's protests. If the deemed liquidation was unlawful, then Customs was likely correct to grant Shinyei's protest and to refund duties. The counterclaim thus requires resolution of the same issues as do Shinyei's claims of Commerce- and Customs-error, issues the court has not yet addressed.

CONCLUSION

For the foregoing reasons, we reverse the April 20, 2007 judgment of the Court of International Trade and remand for further proceedings. That court has jurisdiction over Shinyei's claims, and those claims are not precluded or rendered moot by the deemed or actual liquidation of the disputed entries. Thus, as we have repeatedly stressed here, it is time for the Court of International Trade to reach the merits of Shinyei's case.

REVERSED AND REMANDED