NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**SHINYEI CORPORATION OF AMERICA,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-1178

---

Appeal from the United States Court of International Trade in consolidated case No. 00-CV-0130, Chief Judge Jane Restani.

---

Decided: October 22, 2010

---

CHARLES H. BAYAR, Charles H. Bayar Law Office, of Scarsdale, New York, argued for plaintiff-appellant.

MICHAEL P. GOODMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director. Of

counsel was MICHAEL J. DIERBERG, Trial Attorney. Of counsel on the brief was EDWARD N. MAURER, Deputy Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

_____

Before NEWMAN, PROST, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

Appellant Shinyei Corporation of America (Shinyei), appeals the final decision of the United States Court of International Trade denying an award of fees under the Equal Access to Justice Act (EAJA). Because the Court of International Trade abused its discretion by determining that the government's position was substantially justified, we *reverse* and *remand* for a determination of fees.

## BACKGROUND

This is the third time this case has come to us on appeal. Because this is an EAJA case, the entire course of the government's conduct—from the earliest Commerce decisions through the current appeal—is relevant.

Commerce issued an antidumping order covering ball bearings from Japan and several other countries in 1989. *Shinyei Corp of Am. v. United States*, 524 F.3d 1274, 1277-78 (Fed. Cir. 2008) (*Shinyei II*). Shinyei imported ball bearings between May 1, 1990 and April 30, 1991. Because the bearings were subject to antidumping duties, Shinyei made a cash deposit of antidumping duties of 45.83% ad val. *Id.* at 1278. During this time period, Commerce performed its second administrative review in which it determined that the 45.83% duty rate was incorrect. The final rates determined appropriate by Commerce ranged from 1.8% to 16.71%. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof*

*from France; et al.; Final Results of Antidumping Duty Administrative Reviews*, 57 Fed. Reg. 28,360, 28361 (Dep't Commerce June 24, 1992), amended by 57 Fed. Reg. 59,080 (Dep't Commerce Dec. 14, 1992).

In 1998, following the final rate determination, and a related judicial action, Commerce issued instructions to Customs to liquidate all entries during this period at the lower rates (1.8%-16.71%). The instructions inexplicably omitted Shinyei. There is no dispute over the merits, Shinyei was entitled to the lower rate determined by Commerce in the second administrative review – 1.8%-16.71%. Commerce admits that it inadvertently left Shinyei off of the liquidation instructions to Customs. J.A. 626-27. As a direct result of this error, Shinyei remained subject to the 45.83% rate.

On March 23, 2000, Shinyei filed suit in the Court of International Trade challenging Commerce's 1998 instructions. Shinyei argued that Commerce erred by excluding it from these instructions and thus not properly implementing the result of the second administrative review. Shinyei argued it was entitled to the lower rates and that its merchandise should not be liquidated at the higher 45.83% rate which was rejected by Commerce in the second administrative review. On August 1, 2000, more than four months after Shinyei initiated a suit pointing out Commerce's error, Commerce ordered Customs to actually liquidate the merchandise at issue at the incorrect 45.83% rate.[1]

After this actual liquidation occurred, pursuant to Commerce's order, the government argued that the Court

---

[1] Shinyei also sought a writ of mandamus to direct Customs to liquidate the entries at issue at the rates determined in the second administrative review, the Customs-error case.

of International Trade did not have jurisdiction because Commerce actually liquidated the entries. The government argued that once entries are liquidated, their duty rate cannot be challenged in the Court of International Trade. On February 14, 2003, the Court of International Trade dismissed the litigation for lack of jurisdiction because of the actual liquidations. Shinyei appealed. We determined that because Shinyei challenged Commerce's instructions under the APA, rather than its final determination under section 516A of the Tariff Act, the actual liquidations did not divest the Court of International Trade of jurisdiction. We reversed and remanded the case specifically for further proceedings *on the merits* of Shinyei's APA claim. *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004) (*Shinyei I*).

On remand, the Commerce-error case and the Customs-error case were consolidated. The government argued that even though we held that the actual liquidation did not divest the Court of International Trade of jurisdiction, the entries were deemed liquidated[2] in 1998 and that this liquidation divested the Court of International Trade of jurisdiction. The parties filed cross-motions for summary judgment on the government's

---

[2] Here, the parties both agree that Shinyei's entries were deemed liquidated. An entry is "deemed liquidated" if Commerce fails to actually liquidate the entry within 6 months of the publication of final review results. 19 U.S.C. § 1504(d). Shinyei received no notice of this deemed liquidation and it appears that the government only discovered it much later during litigation. *See Shinyei II*, 524 F.3d at 1284. If the government had been aware of the deemed liquidation, there would have been no reason for Commerce to order the actual liquidation in August 2000. Notice of a deemed liquidation is important because this notice starts the importer's clock on the time to protest the liquidation.

deemed liquidation defense. The Court of International Trade granted the government's motion for summary judgment and again dismissed the case for lack of jurisdiction. *Shinyei Corp. of Am. v. United States*, 491 F. Supp. 2d 1209, 1222 (Ct. Int'l Trade 2007).

Again, Shinyei appealed this jurisdiction determination. The government argued that the deemed liquidation statute, 19 U.S.C. § 1675(a)(2)(C), forbids judicial review of Commerce instructions after deemed liquidation occurs. We held that the deemed liquidation statute is silent as to reliquidation and judicial review and that we would not read this as a blanket prohibition. *Shinyei II*, 524 F.3d at 1283. Further, we relied on *Koyo Corp. of U.S.A. v. United States*, 497 F.3d 1231, 1242 (Fed. Cir. 2007). In *Koyo*, we determined that a deemed liquidation that does not comport with final administrative review results is invalid. 497 F.3d at 1242-43. In other words, "[a]ssuming that Shinyei's entries were covered by the [results of the administrative review], their deemed liquidation at the deposit rate [of 45.83%] was unlawful." *Shinyei II*, 524 F.3d at 1284. Again, we reversed and remanded for the Court of International Trade to consider the merits of Shinyei's claim.

On remand, when finally faced with the merits of its case, the government agreed to reimburse Shinyei for the duties which had been incorrectly accessed. The parties agreed to a stipulated dismissal and a payment to Shinyei of over $2,000,000. J.A. 781-82.

Following the entry of stipulated judgment, Shinyei applied for an award of attorney's fees under EAJA. The Court of International Trade recognized that it must consider the government's entire course of conduct including Commerce's prelitigation conduct as well as the government's litigation arguments. The Court of Interna-

tional Trade dismissed Commerce's prelitigation conduct as merely a "clerical" error and concluded that it could not render the government's position unreasonable. *Shinyei Corp. of Am. v. United States*, 31 I.T.R.D. 2381 (Ct. Int'l Trade 2009) (*Shinyei-EAJA*). The Court of International Trade focused almost entirely on the government's arguments during litigation. *Id.* It observed that in both appeals, the government supported its position with relevant case law. *Id.* Further, the Court of International Trade pointed out that in *Shinyei II*, we relied on intervening precedent. *Id.*

Shinyei appeals the Court of International Trade's denial of attorney's fees under EAJA. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

Under EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person" and has a "reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The government's "position" includes the underlying actions of any administrative agency as well as the government's litigation arguments. *Smith v. Principi*, 343 F.3d 1358, 1361-62 (Fed. Cir. 2003). Although the "position" of the government involves prelitigation conduct as well as the litigation itself, "only one threshold determination for the entire civil action is to be made." *Comm'r, Immigration & Naturalization Servs. v. Jean*, 496 U.S. 154, 159 (1990).

We review a trial court's determination of substantial justification for abuse of discretion. *Chiu v. United*

*States*, 948 F.2d 711, 713 (Fed. Cir. 1991). "Only if the trial court erred in interpreting the law or exercised its judgment on clearly erroneous findings of material fact, or its decision represents an irrational judgment in weighing the relevant factors can its decision be overturned." *Id.*

Shinyei argues that the Court of International Trade abused its discretion by not properly considering Commerce's pre-litigation conduct as part of the government's "position." We agree. Regarding Commerce's conduct, the Court of International Trade stated:

> Unless bad faith is established, a mere clerical error at the agency level does not automatically render the United States' position unreasonable. Here, the record indicates that the United States attributed its mistake to inadvertence and neglect. Thus, this "negligence is but one part of the agency's conduct" and is a nondeterminative factor.

*Shinyei-EAJA*, 31 I.T.R.D. 2381 (citations omitted). The Court of International Trade failed to consider that the government, once notified of its error, chose not to remedy the error and provide a refund, until after more than nine years of litigation. The government was on notice of its error no later than March of 2000 when Shinyei initially filed suit. After being notified of this clear error, the government ordered the actual liquidation of the entries in August of 2000 at the incorrect rate.[3] Then, the government argued that by actually liquidating at the incor-

---

[3] During oral argument, Shinyei argued that it had also notified the government repeatedly by letter and otherwise prior to the actual liquidation that Commerce's 1998 instructions to Customs to liquidate at the reduced rate should include Shinyei. It appears, however, that this evidence is not a part of the record before us, and therefore we do not consider it.

rect rate, it divested the Court of International Trade of jurisdiction.

While Commerce's 1998 instructions to Customs may have inadvertently omitted Shinyei and while this may have been "clerical" or "negligent" in nature, this must be viewed in combination with the government's unwillingness to remedy the clear error after it was notified. Worse yet, the government ordered the actual liquidation at the higher 45.83% rate, several months after being notified of the error. This is unreasonable behavior and cannot be dismissed as merely a clerical error. In this case, there was not merely the clerical error, but the subsequent unwillingness to remedy that error even after notification. The Court of International Trade erred when it failed to consider this governmental conduct. The government does not, in this litigation which spans nearly ten years, argue that Shinyei's entries were properly assessed at the duty rate of 45.83%. Rather the government's litigation position amounts to the following: we erred when we inadvertently left Shinyei off the orders to liquidate at the reduced rate and then after being notified of this error by the filing of this lawsuit, we nonetheless ordered the liquidation of the entries at the incorrect much higher rate, and this liquidation deprives the court of jurisdiction over this case.

In *Shinyei I*, we held that the court did have jurisdiction, that the actual liquidation did not deprive the court of jurisdiction over an APA challenge, and remanded the case for "proceedings on the merits." 355 F.3d at 1312. On remand, the government again challenged jurisdiction, this time based on a deemed liquidation which it alleged had occurred. This jurisdictional argument paralleled its actual liquidation argument which had already been rejected. In *Shinyei II*, we held that this position was without merit. The government is correct that we

cited our intervening decision in *Koyo*. However, even after *Koyo*, which held that a deemed liquidation that does not comport with final administrative review results is invalid, the government did not acquiesce in the court's jurisdiction.

In *Shinyei II*, the government did ask for a remand in light of *Koyo*, because it was intervening precedent not considered by the Court of International Trade. The government requested remand to argue to the Court of International Trade that *Koyo* did not apply and that despite our decision in *Koyo*, the Court of International Trade still lacked jurisdiction following the deemed liquidation. Oral Arg. at 13:34-14:08, 16:18-26, *Shinyei II*, No. 2007-1291 (Fed. Cir. Feb. 5, 2008). We concluded that remand was unnecessary and that *Koyo*'s core holding was equally applicable to Shinyei's claim.[4]

All of this conduct amounts to the government's "position." *Smith*, 343 F.3d at 1361-62. Viewing the government's conduct in its entirety, we are convinced that the Court of International Trade abused its discretion when it concluded that the government's conduct was substantially justified. We reverse and remand solely for a determination of the amount of fees Shinyei is entitled to under EAJA.

---

[4]    We likewise rejected the government's arguments with regard to the Customs-error cases including its peculiar ripeness argument. The government argued that Shinyei cannot protest until Customs gives it notice of the deemed liquidation. The government then argued that because Customs has never given such bulletin notice, even now more than ten years after the deemed liquidation, Shinyei was without the ability to protest – its claim was not ripe. Under this logic, the government could simply decline to ever provide the notice, and then the importer would never have a right to protest.

**REVERSED and REMANDED**